AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Western District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.  17-mj-1157 |
| INFORMATION ASSOCIATED WITH  E-MAIL ACCOUNTS | ) |
| STORED AT PREMISES CONTROLLED BY Google, Inc. | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):*  See Attachment A, which is attached hereto and incorporated by reference herein;

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*  Evidence pertaining to violations of Title 18, U.S.C. §§1343 and 1349, as more fully set forth in Attachment B, which is attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____18_____ U.S.C. § _____1343 and 1349_____ , and the application is based on these facts:  SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Jeffrey M. Lyons, SA, ICE-HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _11/21/17_

_____
*Judge's signature*

City and state:  Buffalo, New York

JEREMIAH J. McCARTHY, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN APPLICATION FOR A SEARCH WARRANT

STATE OF NEW YORK    )
COUNTY OF ERIE       )
CITY OF BUFFALO      ) SS:

I, **Jeffrey M. Lyons**, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with certain e-mail accounts, specified in Attachment A, that are stored at premises owned, maintained, controlled, or operated by Google Inc.

2.     Google Inc. is headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

3.     The accounts to be searched are further described in the following paragraphs and in Attachment A, which is attached hereto, and incorporated herein by reference. This affidavit supports the seizure of the items listed in Section II of Attachment B, which is attached hereto and incorporated herein by reference.

4.     This affidavit is made in support of an application for search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google Inc. to disclose to the

government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

5.     I am a Special Agent with United States (U.S.) Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and have been so employed for approximately 15 years.  I am currently assigned to the Office of the Special Agent in Charge, Buffalo, New York to investigate crimes related to fraud and identity theft within the Western District of New York.

6.     The facts in this affidavit come from my personal observations, my review of various records and reports, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTES

7.     Title 18, United States Code, Section 1343, Wire Fraud, pertains to whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.  Title 18, United States Code, Section 1349, pertains to those who conspire to commit certain offenses, including Wire Fraud.

## CITE LOCATIONS OF E-MAIL ACCOUNTS TO BE SEARCHED

8.      The e-mail addresses to be searched, as listed in Attachment A, are cited in the following paragraphs of this affidavit:

| | |
|---|---|
| nmartinezusp@gmail.com | Paragraph 36, 47 |
| jackie.ellicottservices@gmail.com | Paragraph 36, 46, 47 |
| authorize.paymentprocessing@gmail.com | Paragraph 37, 38, 42, 47 |
| gregmack1208@gmail.com | Paragraph 43, 44, 47 |
| eric13ross@gmail.com | Paragraph 39, 47 |
| officeasst.las2016@gmail.com | Paragraph 44, 47 |
| allstatekgroup@gmail.com | Paragraph 42, 43, 47 |
| lcservices726@gmail.com | Paragraph 40, 41, 47 |

## PROBABLE CAUSE

9.      Since approximately April 2016, I have been involved in a criminal investigation of an illegal debt collection scheme perpetrated by Joseph Ciffa, Damario Turpin, their associates and employees.  As part of that investigation, the Court has signed the following search and seizure warrants:

a.      16-M-114-1, Search and Seizure Warrant for 870 Ontario St., Second Floor, Kenmore, N.Y.

b.      16-M-114-2, Search and Seizure Warrant for 1625 Buffalo Ave., Suite 2H, Niagara Falls, N.Y.

c.      16-M-114-3, Search and Seizure Warrant for 2084 E. River Rd., Grand Island, N.Y.

d.      16-M-114-4, Search and Seizure Warrant for Black Toyota Tundra Truck, N.Y. Plate GRN1922.

e.      17-MC-15, Seizure Warrant for 2016 Harris 220 CX Pontoon Boat, Serial No: HAMP1673J516

f.      16-M-114-5, Search and Seizure Warrant for Simplicity Collection Software Acct 1394.

g.      17-M-3, Search and Seizure Warrant for Nest Lab Inc. Acct 2887042.

h.      17-MC-1, Seizure Warrant for Damario Turpin Legal Consultant Services KeyBank Acct. No. 591000254076

i.      17-MC-2, Seizure Warrants for Damario Turpin Legal Consultant Services KeyBank Acct. No. 591000254092 and MoneyGram Express Payment Account

j.   16-MC-42, Seizure Warrant for Gateway Process KeyBank Bank Acct. No 591000250090 and Northern Natural Oils Citizens Bank Acct. No. 4015369172

k.   17-MC-19, Seizure Warrant for Erica Lounsberry Spencer Partners Inc. MoneyGram Express Payment Account

l.   17-MC-16, Seizure Warrant for United Mediation Group LLC. Northwest Savings Bank Acct. No. 3806063750

m.   17-MJ-1034-1, Search and Seizure Warrant for 3060 Bailey Avenue, Suites 31 and 35, Buffalo, NY

n.   17-MJ-1034-2, Search and Seizure Warrant for 3411 Delaware Avenue, Suites 200 and 201, Buffalo, NY

o.   17-MJ-5228, Search and Seizure Warrant for Simplicity Collection Software Acct 1426

10.   In addition, on June 15, 2017, Hon. Jeremiah J. McCarthy signed a criminal complaint, charging Joseph Ciffa, Damario Turpin, and others with Conspiracy to Commit Wire Fraud, related to the illegal debt collection activities referenced below. That complaint remains pending under Case No. 11-MJ-1060.

### Summary of Ciffa Debt Collection Operation

11.   Based upon interviews with cooperating individuals, the review of banking records, evidence obtained through the execution of search warrants and interviews of victims, I have established that the fraudulent debt collection scheme perpetrated by Ciffa and his associates typically operated as follows:   A victim's personal information was accessed/researched using debt profile information and data information systems. A phone call or calls were then made to the victim threatening felony criminal charges and arrest. The victim was provided a phone number to call which placed the victim into contact with other participants of this fraud scheme, often impersonating an attorney handling the case. During the final step of the fraud scheme, conducted by "closers," the victim was told that there was

4

some outstanding debt needing immediate payment and that the victim faced imminent arrest, service of a warrant, and/or other threatening consequences. To avoid these consequences, the victim was instructed on how to make a payment for the purported delinquent debt. The payment was eventually paid into and withdrawn from accounts controlled by Ciffa and/or his associates. One such account used by Ciffa was a MoneyGram account belonging to associate Damario Turpin.

12.     Various employees of Ciffa's operation, including witnesses and cooperating defendants, have admitted that Ciffa's operation routinely used the methods described above to over-collect from victims (to collect amounts over and beyond debts actually incurred by the victims) and to re-collect from victims whom they knew had already paid off any debts actually incurred. A search of the Simplicity[1] account utilized by Ciffa's operation confirmed that the operation over-collected and re-collected from targeted victims.

13.     In the course of this investigation, I have spoken with multiple victims who have paid money to Ciffa's operation as a result of Ciffa's fraudulent debt collection scheme. All the victims, without exception, detail being contacted by telephone and threatened with criminal charges and arrest unless immediate payment was made for an outstanding debt. As a representative example of the victims I have spoken with, on December 22, 2016, I spoke with J.D. who described the incident involving two payments J.D. made into the Turpin MoneyGram account. On April 1, 2016, J.D. was in New Mexico for First Responder training

---

[1] Simplicity is debt collection software program often used by debt collection shops to distribute/assign debt portfolios to collectors, track debts owed and collected, and make notations as to collection attempts.

when he received a telephone call from Christen Carter from Valentine Legal Mediation.  [I make note that Valentine Legal Mediation was one of the false business names that Ciffa's operation used while contacting victims.]   J.D. was told that two felony arrest warrants had been issued for his arrest related to check fraud. J.D. advised that he was out of town and was told that he would be arrested upon his return home. J.D. was told that the criminal charges were related to an unpaid loan. J.D. offered to make an immediate credit card payment but was advised that he needed to make an immediate MoneyGram payment.  Fearing arrest, J.D. agreed to make two payments. J.D. was provided the MoneyGram account information for the Turpin MoneyGram Account and made an initial payment of $900 on April 19, 2016 at a local Walmart and a second payment of $450 on May 20, 2016.

### Damario Turpin

14.     In the course of the investigation of Ciffa, Damario Turpin was identified as a business associate of Ciffa. Damario Turpin is the owner of "Legal Consultant Services," a debt collection business operating in Buffalo, New York. Ciffa has used Turpin to process some of Ciffa's fraud victim payments in exchange for a fee.  Turpin had a MoneyGram payment account that was used for processing these victim payments.  In addition to processing victim payments on Ciffa's behalf, Turpin also operated an illegal debt collection fraud scheme in the Western District of New York.

15.     While operating his fraudulent debt collection scheme, Ciffa always had at least two payment processing accounts available to process victim payments.  Ciffa made use of a

MoneyGram account maintained by Damario Turpin under the name Legal Consultant Services.

16.     Information provided by MoneyGram, relating to the Turpin MoneyGram Account, shows that between November 4, 2015 and February 3, 2017, there were 6,195 transactions of individuals making payments into this account, for a total of $3,557,016.75. MoneyGram provided the names of the individuals who made payments, the dates of payment, the amounts paid and address and contact phone numbers of the payees.  I contacted many of these individuals, who corroborated that they were victims of the activity described above, in paragraph 11.

17.     On December 15, 2016, law enforcement agents executed a search warrant at Joseph Ciffa's residence at 2084 E. River Road, Grand Island, NY 14072.  During this search agents discovered a debit card bearing Damario Turpin's name linked to the Turpin KeyBank Account; business checks for a Turpin KeyBank Account; and a bank signature stamp for Damario Turpin.  I have reviewed the processed checks provided by KeyBank for the Turpin KeyBank Account and can attest that the Damario Turpin signature stamp discovered in Ciffa's residence matches the signature stamps shown on the checks made payable to Ciffa's employees.

18.     On December 15, 2016, law enforcement agents executed a search warrant at 870 Ontario Street, Kenmore, NY 14217, one of Ciffa's business locations.  During this search, pay

sheets bearing victim information and payment information were discovered with notations indicating that victims made payment into the Turpin MoneyGram account.

19.     After conducting a limited query sample of the phone numbers used by Turpin's debt operation and his business name "Legal Consultant Services" in the Federal Trade Commission's complaint database called the Consumer Sentinel Network, I was able to identify over eighty (80) targeted fraud victims across the United States. All of these targeted victims reported having been threatened with felony charges and imminent arrest unless an immediate payment was made.

20.     While researching victims targeted by Turpin's illegal debt collection scheme, I learned that Turpin's organization was also using the name Pre-Legal Mediation Services. While conducting queries in the Consumer Sentinel Network, I discovered a consumer complaint submitted on March 16, 2017. The victim, identified as M.T. in Tennessee, reported receiving a call on February 9, 2017. M.T. reported being threatened with arrest if she did not make an immediate payment of $528.00. Fearing arrest, M.T. made a $528.00 payment to a company identifying itself as Pre-Legal Mediation Services. M.T. also provided the phone number used during this fraud incident. On March 22, 2017, an employee from the New York State Office of Attorney General placed a recorded call to this phone number. Damario Turpin himself answered the phone identifying himself as "Stanley Roberts." I have listened to this recorded phone conversation and confirmed that the voice of the person claiming to be Stanley Roberts is Damario Turpin.

8

21.     On January 12, 2017, two applications for seizure warrants were presented to Hon. Michael J. Roemer, seeking authorization to seize the contents and monies contained within two KeyBank accounts, and the Turpin MoneyGram account referred to above. The affidavit, submitted in support of these seizure applications, detailed that the monies contained in these accounts were proceeds of specified unlawful activity, to wit: wire fraud in violation of Title 18, United States Code, Sections 1343 (Wire Fraud), 1349 (Wire Fraud and Conspiracy to Commit Wire Fraud) and Title 18, United States Code, Section 1956 (Money Laundering). Those seizure warrants were authorized by Hon. Michael J. Roemer.

22.     On January 12, 2017, these seizure warrants were served upon KeyBank and MoneyGram. Upon learning that there was some sort of problem with his bank accounts, Turpin sent an e-mail to MoneyGram stating, "My account information was stolen and hacked, so I need immediately for ALL deposits to my current account held until I open a new account and send my new bank information. Please act fast due to my business suffering behind this matter. Thank you!!!" As detailed in the affidavit submitted in support of the seizure applications, Turpin's "business" consisted of defrauding victims across the United States via wire fraud activities; namely, threatening victims with felony charges and arrest unless immediate payment was made.

**United Mediation Group**

23.     Based on my training and experience, I know that illegal debt collection operators in the Western New York region routinely encounter a common problem: banks, payment processing companies and law enforcement frequently shut down or seize the accounts used by

illegal debt collectors due to suspected fraud activity. When a bank account or payment processing account is shut down, it is common for a debt collection group to route their victim payments through other accounts maintained by other debt collection groups.

24.   On January 13, 2017, the day after the seizure warrants were executed upon his accounts with KeyBank and MoneyGram, Turpin opened another bank account at Northwest Savings Bank. This account was opened in the name Legal Consultant Services, LLC with Turpin as the sole signatory. Less than one week later, Turpin started routinely depositing Northwest Savings Bank checks into this account from a company called United Mediation Group LLC. In three weeks' time, Turpin deposited four checks from United Mediation Group LLC for a total of $18,952.01. Below is a sampling of these deposits:

01/20/2017   Check #1051709 from United Mediation Group LLC $6960.00
01/27/2017   Check #3382 from United Mediation Group LLC $1605.22
02/03/2017   Check #3396 from United Mediation Group LLC $7200.00
02/10/2017   Check#3401 from United Mediation Group LLC $3186.79

25.   I have reviewed bank records for Damario Turpin's previous Legal Consultant Services KeyBank accounts and discovered that between April 25, 2016 and September 7, 2016, Turpin made at least 10 checks payable to United Mediation Group for a total of $108,153.30. This review of banking records shows that monies have flowed between accounts maintained by Damario Turpin Legal Consultant Services and United Mediation Group LLC between at least April 2016 and April 2017.

26.   The United Mediation Group checks referenced above were drawn on a Northwest Savings bank account opened on or about April 2016, in the name United

Medication Group LLC.  The authorized signors on the account were L.M. and A.F.  L.M. has been identified as an employee of another debt collection organization since 2015, run by a person named G.M., described in more detail below.


27.     Additionally, in April 2016, three checks were written from the Turpin Legal Consultant Services KeyBank account to L.M. for a total of $8,000.


**<u>United Mediation Group Victims</u>**

28.     After conducting a query sample of United Mediation Group LLC in the Consumer Sentinel Network, I was able to identity over seventy (70) targeted fraud victims.  As will be described below, United Mediation Group LLC has been defrauding victims across the United States by using the same illegal techniques known to be employed by Joseph Ciffa and Damario Turpin.  United Mediation Group LLC possessed a MoneyGram account that was used to process victims payments.  The funds from this MoneyGram account were routinely deposited into a United Mediation Group LLC's Northwest Savings bank account.  Checks from the United Mediation Group LLC 's Northwest Savings bank account were then routinely made payable to Legal Consultant Services, Damario Turpin's business.


29.     I have spoken to numerous fraud victims who were directed to make payments into the United Mediation Group LLC MoneyGram account.  The following is representative of the fraud victims I have spoken with:  While searching for fraud victims on the Consumer Sentinel Network, I discovered a complaint filed on March 23, 2017 by victim "M.H." from Missouri. I contacted M.H. and spoke with her regarding her complaint. On March 20, 2017,

11

M.H. received a call from United Mediation Group advising that she owed money for a loan she applied for and received several years ago.   M.H. was told that if she didn't pay, a Sheriff's Deputy would arrive at her house to arrest her.   M.H. stated that she had just started a very good job that required a background check.  Fearing arrest and the loss of her new job, M.H. agreed to pay.  M.H. was directed to send a $1,249.00 payment via MoneyGram to a company called United Mediation Group, LLC.  M.H. made this payment and, after doing some subsequent research, discovered that she had been the subject of false threats of arrest.

## United Mediation Group LLC MoneyGram Account

30.     As detailed above, fraud victims across the United States have been directed to make payments into this United Mediation Group LLC MoneyGram account.  The illicit proceeds collected into this MoneyGram account were then transferred into the United Mediation Group LLC, Northwest Savings Bank account.  On March 29, 2017, MoneyGram provided information showing that, between June 27, 2016 and March 15, 2017, there was a total of 1056 transactions of individuals making payment into the United Mediation Group LLC MoneyGram account for a total of $695,932.64.

31.     As detailed in this affidavit, both United Mediation Group LLC, Damario Turpin, and Joseph Ciffa operated related, and nearly identical fraud schemes involving wire fraud activity, including the use of false threats of prosecution and arrest to induce payments from victims.  Victim interviews and bank records have shown that United Mediation Group LLC and Damario Turpin used the United Mediation Group LLC Northwest Bank account and MoneyGram account to process and funnel victim payments.  I have also been able to

obtain toll records for the phones associated with L.M. and Damario Turpin.  An analysis shows that between January 28, 2016 and February 1, 2017, L.M. and Turpin have contacted each other 1173 times.

### Execution of Search Warrants

32.     On April 18, 2017, based upon the foregoing information, Hon. Jeremiah J. McCarthy reviewed and approved Search Warrants for Damario Turpin's two known business locations in the Western District of New York.  The Application for the Search Warrants was based upon probable cause that violations of Title 18, United States Code, Sections 1343 (Wire Fraud) and 1349 (Conspiracy to Commit Wire Fraud) had taken place.  On April 21, 2017, during the execution of these search warrants, law enforcement encountered Turpin and his debt collection employees at 3411 Delaware Avenue, Suites 200 and 201, Buffalo, NY 14217. During these searches, evidence was obtained confirming that Turpin and other associates were engaged in wire fraud activities, related to their debt collection operation.

33.     During this search, call scripts were discovered throughout the office at employee desks, confirming that Turpin's employees were calling debtors and threatening them with criminal charges and arrest, oftentimes while impersonating law enforcement.   During this search warrant, a person with initials J.H. was encountered.  J.H. worked at a desk next to Turpin in the rear portion of this office space.  Two computers belonging to J.H. were seized.  A review of these computers revealed that J.H. had documents on these computers containing sample call scripts used for contacting debtors.  One such document contained a series of call scripts entitled "First Message", "Second Message", "Third Message" and "Final Message".

13

The intensity of the threats increases with each message. The "Final Message" reads as follows:

> "This message is intended for (DTR's Name). My name is
> _____, from Advanced Capital Services. Your case is being
> processed today. It will be based on breach of contract;
> allegations are of theft of good and services, and possible
> malicious intent to defraud a financial institute. In order to place
> a stop order on this, I must speak with you before 5pm EST today
> at xxx-xxx-xxxx [number redacted]"

34.      J.H.'s cellular telephone was also seized and searched. During a review of J.H.'s cell phone, text messages were discovered between J.H. and several individuals discussing the debt collection operation. In one text message dated March 20, 2017, J.H. states, "Ok i will, my office is under Greg… let me go over it with him and get some numbers and then I will definitely give you a call". Furthermore, as law enforcement executed the search warrant at 3411 Delaware Avenue on April 21, 2017, J.H. texted another collector stating, "Cops here call Greg asap". The individual identified as Greg in these text messages is a person with initials G.M., who, according to witness accounts, court filings, and other records, has long been involved in the debt collection business in Western New York, and elsewhere, and sells or places debt with other individuals in exchange for payment or a portion of amounts collected.

35.      Also discovered on J.H.'s cell phone were text messages exchanged between J.H. and G.M. The cell phone number associated with G.M. has been confirmed from multiple sources in the course of this investigation. These texts involve issues related to debt collection, such as hiring new workers, collection reports for various debt shops, amounts of money

collected, and the loading of debt files into the debt collection software.  Below is a sampling of

the texts:

> 10/24/2017 G.M. to J.H.: "Make sure your tight and right.  No scripts out just in case"

> 04/03/2017 J.H. to G.M.: "Also quick question,,, do you want me on the same side with Demario?  Or am I supposed to be going on the right larger area?"

> 04/03/2017 G.M. to J.H.: "You.  The same side to help him.  Keep point callers downtown until I get back."

> 04/10/2017 G.M. to J.H.: "Good morning.  How you doing.  How was your weekend?"

> 04/102017 J.H. to G.M.: "Good morning sir!  It was nice how was yours?"

> 04/10/2017 G.M. to J.H.: "It was good thanks.  What's the game plan today?"

> 04/10/2017 J.H. to G.M.:  "Well, I'm down at Delaware waiting for Demario and his crew, I'm all set up…"

> 04/10/2017 G.M. to J.H.: "Who is running this mornings payments?"

> 04/10/2017 J.H. to G.M.:  "I have all of Demario's, I'm sure laura probably took the others with her"

The text messages discovered on J.H.'s cell phone indicate that G.M. was J.H.'s boss, and that

he directed her to assist Turpin with his debt collection operation.


36.     Also discovered on J.H.'s cell phone were several e-mails involving the debt

collection operation.    One e-mail, dated February 8, 2017 was sent from

nmartinezusp@gmail.com to J.H. at jackie.ellicottservices@gmail.com.  J.H. used the alias

Jackie Newbern with her jackie.ellicottsvervices@gmail.com e-mail account.  The subject line

for this e-mail was "serve" and contained a sample call script for illegal debt collection. The call script contained in this e-mail is as follows:

> "This message is intended for _____. This is SAM SMITH calling from company name. This call is to inform you of a 2 part felony complaint that has been forwarded to my office. This complaint has been forwarded to my office for pursuance of charges within your local county. Now once filed a warrant for your arrest will be issued and the sheriffs department will accompany me to your home or place of employment for your detainment. If you have any questions, concerns or objections prior to the filing contact me back immediately at 855-xxx-xxxx. _____ you have now been legally notified in accordance to all federal and state laws."

37.    Another e-mail communication discovered on J.H.'s cell phone is from authorize.paymentprocessing@gmail.com dated November 8, 2016. This e-mail has the subject line "logins". In this e-mail, J.H. states, "Hi can you email me the logins, caus I know I'm going to have to run pymts friday from home, and once you gave them to me I saved the password on the computer". The e-mail response from authorize.paymentprocessing@gmail.com provides the login information for the United Mediation Group LLC MoneyGram account and the login information for a merchant account website to process credit card payments. This e-mail is signed "Laura" with a 716 area code phone number. In the course of this investigation, evidence has been obtained that the 716 area code phone number attached to this e-mail belongs to L.M. As has been detailed in this affidavit, the United Mediation Group LLC MoneyGram account has been used to accept debtor payments obtained as a result of wire fraud activities.

38.    Another    e-mail    communication    between    J.H.    and authorize.paymentprocessing@gmail.com dated January 9, 2017 is titled "SIMPLICITY

LOGIN AND INSTRUCTIONS". Contained in this e-mail are instructions for logging into the Simplicity debt collection account associated with "COMPANY PIN: 1426" with several user names and two different passwords. During the search warrant executed upon Turpin, several of his employees had their computers open to the Simplicity account identified with "COMPANY PIN: 1426". This Simplicity account was used by Turpin to manage his illicit debt collection activities.

39.     Another e-mail communication discovered on J.H.'s cell phone is to eric13ross@gmail.com dated November 8, 2016. J.H. saved this e-mail address contact as E.R. E.R. is a person who is known  to operate an illegal debt collection shop for G.M. in Jacksonville, Florida. A confidential source who worked at various debt collection shops in Jacksonville, Florida, including a debt shop operated by E.R., confirmed that E.R. managed the debt shop on behalf of G.M. Additionally, a confidential source who worked for G.M. processing debtor payments for G.M.'s collection shops has confirmed that she processed debtor payments for E.R., who she described as G.M.'s best money making manager. A review of the text messages on J.H.'s phone exchanged between L.M. and J.H. discuss their processing debtor payments for E.R. In the above referenced e-mail, J.H. writes to E.R. with the title "2017-84968 invalid card #." The number 2017-84968 in the title of this e-mail references a Simplicity debt collection account. During the search warrant conducted upon Damario Turpin's office, computers were found with employees using a Simplicity debt collection account. A review of that Simplicity Account indicates that it is used by multiple debt collection shops. Furthermore, confidential sources who have worked for G.M. debt shops have stated that G.M.'s operation

uses a Simplicity debt collection account.   As the above cited e-mail shows, E.R., communicated via e-mail with J.H., citing Simplicity debt accounts; specifically, that a debtor's credit card number provided for payment was "invalid".

40.     Another e-mail communication discovered on J.H.'s cell phone is from lcservices726@gmail.com dated March 3, 2017.  This e-mail address containing "lcservices" appears to be a reference to Turpin's business name Legal Consultant Services.  The title of this e-mail is "2017-3704", a reference to a Simplicity debt account.   This e-mail contains information related to a credit card payment for $390.58.     The writer using lcservices726@gmail.com responds to J.H. stating, "DO YOUR FUCKING JOB."   In response, J.H. writes, "FUCK YOU I WILL ADVISE GREG THAT YOU ARE NOW HARASSING ME."  This e-mail communication cites a Simplicity account number, a debtor credit card payment and shows a conflict arising, with J.H. threatening to "advise Greg."   It is believed the "Greg" cited in this e-mail refers to be G.M.

41.     Another e-mail communication discovered on J.H.'s cell phone is from lcservices726@gmail.com dated February 9, 2017.   This e-mail is titled "2017-27253 NSF". The number 2017-27253 references a Simplicity debt account and "NSF" is a common acronym used in debt collection and stands for Non-Sufficient Funds".  This e-mail has the author using the lcservices726@gmail.com stating, "It was already ran by Laura and went thru".  J.H. responds, "WELL GLAD THAT DECLINED FOR ME LOL."  This e-mail communication cites a Simplicity account number and that the payment "was already ran by Laura."  It is

believed that the "Laura" cited in this e-mail refers to L.M., known to process debtor payments for G.M. debt shops.

42.     Another e-mail communication discovered on Hannah's phone is from allstatekgroup@gmail.com covering dates from March 16, 2017 to April 21, 2017. The title of this e-mail chain is "3/15 remit", referring to how much money was collected by a debt collection group. Also included in this e-mail string is e-mail authorize.paymentprocessing@gmail.com, believed to be used by L.M. The author using authorize.paymentprocessing@gmail.com states, "PLEASE TELL ME WHICH ONES YOU CHANGED I NEED CASE #'S AND DATES SO I CAN COMPARE". J.H. responds, "no this is the one I had, I was missing the 2 the 4/3 chargeback then the 4/6 pymt 2017-14693 of 125.29... $7297.42 for yours and 7515 on my end..." The author using e-mail address allstatekgrtoup@gmail.com wrote, "Also, you just received 3 charges back for 2017-17326..." This e-mail string discusses the "remit" for how much money was collected, cites a Simplicity account number and mentions charge backs. In debt collection, charge backs refer to debtors who have made a payment and then change their mind and have the credit card transaction cancelled.

43.     Another e-mail communication between J.H. and allstatekgroup@gmail.com was exchanged between January 31, 2017 and February 3, 2017. The title of this e-mail chain was "Merchant contract." In this e-mail chain, J.H. states, "Quick question as far as wiring and

remitting, we are weekly, again Thursday to Wednesday, so typically wiring will be done on thursday correct? And will you need my banking info." J.H. then provides the bank account routing number for TW Holding Group LLC.  Investigation has shown that TW Holding Group LLC is a corporate entity J.H. registered with the New York Department of State on July 13, 2015.  After a few additional e-mail exchanges, J.H. writes, "OK GREAT THANKS I WILL LET GREG KNOW!"  Again, it is believed that G.M. is the person referred to in this e-mail chain as "Greg."

44.     Another e-mail communication discovered on J.H.'s phone is from officeasst.las2016@gmail.com dated April 17, 2017.   This e-mail is entitled "4/17 DECLINES."   In this e-mail, J.H. cites a number of Simplicity account numbers and the problems encountered with processing payments. In this e-mail, J.H. writes, "2017-73162 NSF, 2017-74079 NSF, 2017-74750 INVALID CARD, 2017-12744 NSF…"

45.     Multiple confidential sources, including former employees of G.M., and employees working in debt shops that collect on G.M.'s debt, have advised that G.M. is affiliated with debt shops in several locations in the United States, which collect upon his debt, in exchange for a commission.  Some of these sources have also advised that said debt shops are only permitted by G.M. to process payments through accounts controlled by G.M.  The above referenced e-mail appears to discuss J.H. processing payments for a debt shop related to e-mail address officeassist.las2016@gmail.com.  This e-mail discusses a number of Simplicity debt accounts that either had "NSF" (Non-Sufficient Funds) or "Invalid" credit card number.

46.     Another e-mail communication discovered on J.H.'s phone is with e-mail address gregmack1208@gmail.com dated January 26, 2017.  This e-mail address is saved in J.H.'s phone under the name G.M.  A confidential source who operated a G.M. debt shop confirmed that e-mail address gregmack1208@gmail.com belongs to G.M.  In this e-mail, J.H. sent some documentation, which was unavailable because her cell phone was placed on Airplane Mode upon seizure to protect the data on the phone.  The individual identified as G.M. responds, "Try these to see how you would do…".  Since all the e-mail communications conducted by J.H. using e-mail address jackie.ellicottservices@gmail.com involve details of the debt collection operation known to engage in wire fraud activities, and since G.M. appears to be the primary manager of this activity, there is probable cause to believe that e-mail account gregmack1208@gmail.com will contain additional e-mails discussing the various elements of this fraudulent debt collection scheme.

47.     The e-mails discovered on J.H.'s phone contain discussions related to the various elements of the debt collection operation shown by financial and other records to be affiliated with the entity known as United Mediation Group, which, as shown herein, is affiliated with Damario Turpin and his illegal debt collection operation.  These e-mails contain information related to processing payments from debtors, chargebacks (when debtors contest payments made), payroll and business expenses, login information for Simplicity debt collection software and paid-in-full letters sent to debtors.  The e-mail addresses used to exchange e-mail with J.H. discussing the details of the debt collection operation are jackie.ellicottservices@gmail.com; gregmack1208@gmail.com; eric13ross@gmail.com; officeasst.las2016@gmail.com; allstatekgroup@gmail.com; nmartinezusp@gmail.com; authorize.paymentprocessing@gmail.com; and lcservices726@gmail.com.

It is apparent from the e-mails described above that the debt operation utilized the Google e-mail accounts specified in Attachment A to communicate and facilitate the criminal activity herein described.

48.     To summarize, based on my review of all of the information described above, and interviews of victims, the wire fraud scheme perpetrated by Ciffa, Turpin, and their associates, operated as follows:  a victim's personal information was accessed/researched using debt profile information.  A phone call or calls were then made to the victim threatening criminal charges and arrest.  The person placing the call often impersonated a police officer or legal process server.  The victim was then be placed in contact with the "attorney" handling the case.  The debt collectors, sometimes impersonating attorneys, explained that if immediate payment was made for an outstanding debt, a "stop order" or "court release number" could be issued nullifying the arrest warrant.  Victim payments were directed to various payment accounts, such as the Turpin MoneyGram Account and United Mediation Group LLC MoneyGram account, and then diverted into various bank accounts.  As this affidavit has shown, there is probable cause to believe others, including L.M., J.H., and G.M. also conspired to engage in this activity, that evidence of such activity is contained within these e-mail accounts, and that these e-mail accounts were used to further the wire fraud activity and conspiracy to commit wire fraud, described herein.

49.     In conclusion, there is probable cause to believe that evidence of Violations of Title 18, United States Code, Section 1343 (Wire Fraud) and Title 18 United States Code,

Section 1349 (Conspiracy to Commit Wire Fraud) are present in the e-mail accounts referenced in Attachment A.

## TECHNICAL BACKGROUND

50.     In my training and experience, I have learned that Google Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Google Inc. allows subscribers to obtain e-mail accounts at the domain name "gmail.com" like the e-mail accounts listed in Attachment A.  Subscribers obtain an account by registering with Google Inc.  During the registration process, Google Inc. asks subscribers to provide basic personal information.  Therefore, the computers of Google Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google Inc.) and information concerning subscribers and their use of Google Inc. services, such as account access information, e-mail transaction information, and account application information.

51.     In general, an e-mail that is sent to Google Inc. subscribers is stored in the subscriber's "mail box" on Google Inc. servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on the server indefinitely.  On July 12, 2017 and again on October 6, 2017, I submitted preservations requests to Google, Inc., under 18 U.S.C. 2703(f), seeking the preservation of records associated with the e-mail accounts listed in Attachment A.  Google, Inc. responded to confirm receipt of the preservation requests, and confirm their compliance with the requests.

52.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Google Inc.'s servers, and then transmitted to its end destination. Google Inc. often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google Inc. server, the e-mail can remain on the system indefinitely.

53.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google Inc., but may not include all of these categories of data.

54.     Subscribers to Google Inc. might not store on their home computers copies of the e-mails stored in their internet based accounts.  This is particularly true when they access their account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

55.     In general, e-mail providers like Google Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

56.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

57.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

58.     In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

59.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to

require Google Inc. to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Attachment A, which is

attached hereto and incorporated as if fully set forth herein. Upon receipt of the information

described in Section I of Attachments B, government-authorized persons will review that

information to locate the items described in Section II of Attachment B, which is attached

hereto and incorporated as if fully set forth herein.


## CONCLUSION

60.     Based on the forgoing, I request that the Court issue the proposed search warrant.

This Court has jurisdiction to issue the requested warrant because it is "a court of competent

jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the

offense being investigated." 18 U.S.C. § 2711(3)(A)(i).


61.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.


## REQUEST FOR SEALING

62.     I further request that the Court order that all papers in support of the application,

including the affidavit and search warrants, be sealed for 60 days, or upon further order of the

Court. These documents discuss an ongoing criminal investigation, the complete details of which are neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
JEFFREY LYONS, Special Agent
United States Immigration and Customs
Enforcement, Homeland Security Investigations

Subscribed and sworn to before me
this ____ day of November, 2017.

_____
JEREMIAH J. McCARTHY
United States Magistrate Judge

27

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with the following Google Inc. e-mail accounts:

nmartinezusp@gmail.com
jackie.ellicottservices@gmail.com
authorize.paymentprocessing@gmail.com
gregmack1208@gmail.com
eric13ross@gmail.com
officeasst.las2016@gmail.com
allstatekgroup@gmail.com
lcservices726@gmail.com

that is stored at premises owned, maintained, controlled, or operated by Google Inc., headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043

**ATTACHMENT B**

**Particular Items to be Searched**

I.    **Information to be disclosed by Google Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google Inc., Google Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of any and all e-mails stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e mail;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    Any and all content and all records or other information stored by an individual using the account, including Friends lists, Photos and Briefcase, in addition to any address books, contact and buddy lists, calendar data, pictures, and files;

d.    All records pertaining to communications between Google, Inc. and its related companies and any person regarding the account, including contacts with support services and records of actions taken.

II.    **Information to be searched for and seized by the government**

All information described above in Section I that constitutes the fruits, evidence and instrumentalities of violations of 18 U.S.C. Section 1343, Wire Fraud and 18 U.S.C. Section 1349, Conspiracy to Commit Wire Fraud, involving J.H., Damario Turpin, G.M., L.M., and others unknown, since January 1, 2015, to and including the present, including each e-mail account listed on Attachment A and information pertaining to the following matters:

Communications associated with: the use and attempted use of telephone calls and e-mails to threaten, intimidate or deceive in an effort to obtain payment from victims; methods used to obtain funds from victims via credit card or other methods of payment; the processing of credit cards by credit card processors; communications with any financial institution regarding the movement and whereabouts of funds derived from the fraud scheme; directions regarding the transfers of these proceeds; the use of fraudulent or stolen identities to facilitate this fraud scheme; the use of spoofing technology and techniques in an effort to conceal criminal activity; use of TLO or other methods used to research victims; efforts to obtain debt portfolios; payments made to obtain debt portfolios; payments remitted to others for debts collected on; information indicating over-collection of debts owned and/or recollection from victims whose debts were already satisfied; invoices and receipts for payments of services used to facilitate fraud related activities; names or identifying information associated with victims of fraud; scripts or "talk-offs" used to perpetrate fraud; the identification of persons involved with or employed engaging in illegal debt collection activities; communications with any financial institution or other financial entity regarding the movement of funds.  Also, records relating to who created, used, or communicated with the account or identifier.